Ms. McAuley. Good morning, Your Honor. Good morning. We know at the outset that you were appointed under the Criminal Justice Act. That's correct, Your Honor. And we want you to know we deeply appreciate your willingness to accept the assignment. Thank you, Your Honor. May it please the Court, my name is Jennifer McAuley, and I'm here today on behalf of Tyrone White, the appellant herein. And I'm here today to ask the Court for an evidentiary hearing. Mr. White has not yet had an evidentiary hearing. This is the first time we're before this Honorable Court on substantive grounds. I will note that this case has been before the Court on two previous occasions, and both of those related to procedural considerations. Now, for the first time, Mr. White's claim was heard or considered by the District Court, and the District Court dismissed the petition. In particular, we're here today on a certificate of appealability as to whether or not the Minnesota Supreme Court made an error in their application of federal law under 2254 D1. And the first thing I'd like the Court to do is to expand the certificate of appealability so that we can talk about the real issue. We did bring a motion that was considered by an administrative panel of the Court to expand the certificate. And in that motion, we did ask for everything in the kitchen sink to be included, but particularly that the certificate be expanded to include consideration under 2254 D2. 2254 D2 would allow us to consider the fact that the Minnesota Supreme Court made a huge, glaring error in its consideration of Mr. White's state post-conviction petition when it held that there was no evidence of a connection between the jury foreperson and the victim's roommate. Well, Counsel, if you emphasize the word connection, I know that they're finding, I don't have the page number, but in the actual Minnesota Supreme Court is wrong. But if you emphasize the word connection, as I understand, there's only one statement in one document that says she works at a casino. A seven word, two, four, six, eight, and how do you count that? A nine or ten word statement is all there is about where she works. That doesn't show a connection. Well, actually, I would direct the court's attention to Mr. White's state post-conviction petition, which included an affidavit of his own affidavit where he let the court know that Siga, that was the victim's roommate's nickname, was a blackjack dealer at the Fond du Lhut Casino. Mr. White's state post-conviction petition also directed the court's attention to the fact that the jury questionnaires, which are part of the administrative record before this court, also identified Ms. Dixon as the blackjack supervisor. So we have Ms. Hinsley, who's identified as the blackjack dealer at Fond du Lhut, and Ms. Dixon, the jury foreperson, who's identified as the supervisor. Ms. Dixon's voir dire also goes into great detail about the closeness of the relationship that she has with the individuals that she supervises. This is where we get this idea of a connection. The documentation that bears this out includes the statement that Mr. White got from a private investigator that verified these employment records, along with his own affidavit that explained what his understanding was here. The piece of evidence that the Minnesota Supreme Court missed, and that the district court, the state district court, appeared to just disregard, was the police report that identified Ms. Hinsley as someone who worked at the Fond du Lhut Casino. This would have been the trigger for anybody, especially trial counsel, to say, wait, hang on. So we've got an individual who's the victim's roommate, who's listed on every witness list, witness and the jury veneer, and nobody notices that these two people are employed at the same place, and that's problematic. That police report was before the Minnesota District Court. It was before the Minnesota Supreme Court. When there was indication during briefing, which Mr. White handled pro se, by the way. When there was indication during briefing that those records were not before the Supreme Court, that they could not find them, he submitted them to the Minnesota Supreme Court by separate submission, which is acknowledged in their docket report. When was that done and by whom? During briefing by Mr. White. Mr. White got copies of the same documents that he was maintaining in his prison cell of the information that he provided to the district court. And when the state's response came in indicating that they weren't aware of these documents, he submitted them. He mailed them to the court. And they show up in the Minnesota Supreme Court docket as a submission at the time that he says it happened, which was before his reply brief would be due. And the Minnesota Supreme Court's response was what? Nothing. They don't acknowledge that these records exist. The Minnesota Supreme Court denied relief because they said this is an unsubstantiated connection. There is, quote, no evidence, unquote, of any connection between these two individuals. And we note that Magistrate Rao in the court below, the federal district court, realized that no, in fact, after my thorough review of the record, there's quite a lot of evidence of a connection, quite a lot of things that show that could have been a trigger that trial counsel or the Minnesota Supreme Court could have seen. What about, I guess it was Mrs. Dixon's response to trial counsel's voir dire questions? Sometimes people lie under oath, Your Honor. That's the biggest concern that we have here, is that perhaps- Is there any indication whatsoever that she was lying? Well, she said that she had no connection to any of the people that were listed on the witness list. And we know that every single iteration of witness list that was submitted to the veneer included Teresa Hensley's name. Well, assuming that the roommate worked at the Fond du Lac Casino, I saw nothing in any of the documentary evidence to indicate she was a blackjack dealer. Where do we get that? Other than, is it just, how do we know she's a blackjack dealer? Teresa Hensley, the roommate? Yes. From Mr. White. Mr. White was acquainted with, her nickname was Siga. She rode around with these people and they were closely linked. So that comes only from his affidavit, though? The fact that she was a blackjack dealer? I mean, to me, that's the key to the connection, is what you're saying, is he's a blackjack supervisor, or she's a blackjack supervisor. The roommate's a blackjack dealer, therefore they had to know each other. I don't know how big, I don't know enough about casinos. But the fact that she worked at the casino doesn't necessarily mean they were associated. She could have been in security. She could have been in food service. She could have done something unrelated to the blackjack dealing. So the only tie, though, is Mr. White's affidavit, right? No. Here's our problem. We need an expanded record, Your Honor. And when you're sitting in prison, you don't have subpoena power. You don't have the power of discovery. And there's only so much information that even a paid private investigator can get you without that power. Without a matter pending before the court and that authority, we can't get at that additional information. So when we look at this at the time of the voir dire, and we look at what counsel knew then, or reasonably, with a reasonable investigation, should have known, right? Yes. And all we know then is Hensley said that she works at the Fond du Loup. How do you say it? I think it's Fond du Loup. Okay, good. Fond du Loup Casino. And that's all we have, right? No. That's all counsel has at that time. No, counsel had the police report. That's also reference multiple. No, I think I'm quoting the police report to you, counsel. Okay. That's Officer, how do you say that name? Elegiac. We'll make it up, you and me. Let's say Elegiac. That's counsel Elegiac, that is Officer Elegiac's only statement are those words. And that's all counsel's got at that time, right? That Theresa Hensley was. Hensley said that she works at the Fond du Loup Casino. That's correct. One other. So that we have to measure it by that, and what reasonable investigation would a counsel have done based on that, right? Well, given that at the time, I think back in 2002, the Fond du Loup Casino is, this is no Vegas casino. This is a tiny, tiny operation at the point. Now it's being expanded. In the last 13 years, it's expanded quite a bit. But at the time, there were, I think, 100, 150 employees total. So compared to what we might think of a casino operation, you're thinking thousands of people. Your Honor mentioned food service and security and stuff like that. At the time, the way that that operation ran, there might have been a couple people in security. But these are details that would be borne out in a hearing. The problem is, this is a potential problem. And when counsel didn't realize it and didn't do any investigation of these connections of Theresa Hensley, there weren't any interviews of her to figure out what was going on. What about Ms. Dixon's answer to the prosecutor that she had no prior knowledge about this case? Was she lying then? She may very likely have been lying. Well, you're asking us to speculate on that. I mean, that's raw speculation, isn't it? Don't we have to presume that jurors tell the truth? No, not in this setting. No, we don't. When we're going to have to request a Schwartz hearing, we're actually presuming that they may not be telling the truth, that we're going to unearth some bias by some careful cross-examination in a controlled setting to find out. Now, on the Schwartz thing, how many times has the Minnesota Supreme Court, if ever, does it frequently grant Schwartz hearings in criminal cases? The Minnesota Supreme Court, I mean, I'm not aware of a lot of Supreme Court authority in that regard. I know that the trial courts will when something like this is brought to bear so that a record can be made and the trial court judge can examine it more. The failure to allow a Schwartz hearing, I haven't seen that much authority on an appellate level from the Minnesota Supreme Court. Well, if Ms. Hensley was such an important figure in this case, why wasn't she called to testify? My understanding is she was continuously hospitalized, and that's the reason that she left work. This is counsel's knowledge, by the way. This isn't reflected in the record, but this is other stuff that would be borne out in an evidentiary hearing. And again, what was Judge, let's see, there was a magistrate recommendation, and Judge Schultz, what specific response did they make to this argument, that it was too speculative? No, the district court adopted pretty much wholesale the magistrate Rao's report and recommendation. And Magistrate Rao held that the Minnesota Supreme Court did err in its conclusion that there was no evidence of a connection. He concluded that this is a very close issue on whether or not this warrants an evidentiary hearing. And for that reason, which is fact-based, he recommended that there be a certificate of appealability as to this issue. Respectfully, it appears that when Judge Schultz adopted the report and recommendation, it may have been an oversight that it was referencing the 2254- It's very confusing to read the ground stuff and the way they are there. That's very confusing. I think the court may have been confused, respectfully. And 2254-D1 just doesn't fit. I'd like to reserve just a few moments for rebuttal, if that's okay. You may, yes, of course. Thank you. We'll hear from the state. Good morning. Mr. Frank, you may proceed. May it please the court, counsel, my name is Matthew Frank, and I represent, well, the warden at the correctional facility where Mr. White is detained. The magistrate went through an exhaustive review of this file and even ordered us to produce a district court file to review. He reviewed all of the submissions at length and issued a very lengthy report and recommendation. And based on all of that, he made a very succinct finding under D1 that this was not an unreasonable application of Strickland. Because to require the trial counsel to have done an investigation based on the record that existed at that time simply misconstrued Strickland. And I think what the magistrate meant there was we can't expect perfect representation by counsel. That's what Strickland repeatedly says. And despite Ms. Dixon's repeated assurances that she could be fair and impartial, despite her statement that she did not know any of the witnesses on the witness list. And Ms. Hensley was, by all accounts, on that witness list. And despite her statement under oath that she knew nothing about the case, reasonable counsel would not have recalled one phrase of that police report and inquired further about that. That's why this was not an unreasonable application of the performance prong of Strickland. And which is why the court's decision below should be affirmed. Well, did the prosecutor have a duty on board to determine whether Ms. Dixon was acquainted with Ms. Hensley? And if so, what was the extent of the relationship? I think that would be a natural area of inquiry for either counsel there. And the magistrate found that counsel relied on the assertions made by Ms. Dixon. On page 35 of the R&R, Magistrate Rao finds that they relied on her assertions. And I think that's a reasonable finding. The voir dire of Ms. Dixon was lengthy. And they repeatedly asked her these questions. And by all accounts, she was a very good juror otherwise. So I don't think it gave any indication this one sentence or one phrase that's vague in a police report to inquire further than what they did with her. Counsel, I notice you've been careful to use the word application. Suppose we expand the certificate. Doesn't the Minnesota Supreme Court make an unreasonable determination of facts in light of the evidence? And there's clear and compelling evidence of that by their statements? You know the statements. Right. And I would say no. The Minnesota Supreme Court's language and its opinion is a little unclear about what it had reviewed. You know, what it saw. It is, I want to say, very unusual. It's a flat statement. We find those report, they even use the word report in the record and there's a report in the record. And that's just wrong, huh? I used to be in a Supreme Court. That's just wrong. The paragraph starts, White asserts that the victim's roommate was a blackjack dealer at a casino where the foreperson was employed as a supervisor. He bases this claim on a statement made by the victim's roommate in the Duluth Police Department report, which he worked at the casino. The court says we can find no statement or report mentioning such statement in the district court record. And what I'm saying is, it's not entirely clear to me what the district court record is that the Supreme Court is referring to there. The Minnesota Rules of Criminal Procedure very clearly say, and did in 2001 when the murder occurred and 2003 when the trial occurred, that disclosures, police reports, are not to be filed in the district court. Now I can say in all candor to the court, I know that happened. And when the magistrate ordered that record produced, that went to Magistrate Rao. I can't really say for sure that the Minnesota Supreme Court, that we know exactly what they looked at. What I think is the most, so even if we can see that that is a very, very technical- Well, the magistrate just says it was wrong. You've never heard the magistrate, Rao, go ahead. Even if we accept that as true, it doesn't make for a good case because the court goes on to say there's no evidence to establish that connection. That they actually knew each other, and there still isn't any evidence of that, that they actually knew each other. And Mr. White has been, excuse me, acting as his own counsel for quite a few years. He hired a private investigator to investigate it. There's no indication that the private investigator did not interview Ms. Hensley. That could have been done very easily. Approaching Ms. Dixon would be a little more troubling because the Schwartz process in Minnesota cautions attorneys at least not to approach jurors about possible bias issues. Or to be very careful about how that's done. But, technically speaking, even if that one particular statement by the court is wrong, it doesn't change the fact that there still is no evidence produced by the person with the burden to prove it. That there was actual, that Ms. Dixon lied in her voir dire when she said she did not know any of the witnesses. And she might have been, to say that she's lying is speculation surely. It may be even that she just didn't know she knew Ms. Hensley. But Ms. Hensley did not testify. So that person was never brought into the courtroom for Ms. Dixon to see. There's just no evidence to establish that they actually knew each other to this day. What would happen procedurally if we agreed with Ms. McCauley's request for relief? Grant the petition or for an evidentiary hearing on the, where would that be done? In federal court, I suppose? Well, the- I mean, we can't, can we order the state court to do, conduct a Schwartz hearing? I don't know, Your Honor, quite frankly. I know Judge, or Magistrate Rao had recommended that the Supreme Court hold a hearing on this. I don't, he didn't cite any authority for that, and I don't know if the court can do that. The Minnesota Supreme Court gave Mr. White that opportunity to establish the need for a hearing. And he simply failed to do that. That's his burden in post-conviction. It's his burden under Strickland. So he had his opportunity for a hearing. He, once he obtained that letter from his investigator, he had to know that did not establish that they, that Dixon and Hensley knew each other. He simply failed to take advantage of the opportunity in post-conviction, in state post-conviction, to get that evidence established. Was there a hearing at state post-conviction? I, I don't see any evidence in the court's opinion that there was a hearing at the, on the state post-conviction. You mean the Minnesota State Supreme Court's opinion? Is that what you mean? Correct. Okay. Right. So, Your Honor, I guess to, to try and answer your question more specifically, I, I don't know. This, under 2254E2, I don't believe White, Mr. White has established the requirements to have a hearing. He did have that opportunity. The court has interpreted the, you know, failed to develop language as looking at some level of, of fault on his part. Some lack of diligence. He had the opportunity, and the Williams court said the purpose of the fault component is to ensure that the prisoner undertakes his own diligent search for evidence. Now, he did do some of that. He had an investigator go out and obtain very little more information about Hensley. He had, he had the opportunity to do more, and he simply did not produce enough evidence that they actually knew each other. Counsel, D2 ends with the phrase, in light of the evidence presented in this state court proceeding, not federal court proceeding. Now, how's, I've looked at the record, other than reading what the magistrate said about it. How much evidence do we have of, pardon me, I'm doubling it. What do, what do, what do we have of the evidence preceded in the state court proceeding? How much is there? What does the record show? In the state court proceeding? Yes. On the post-conviction petition? Do you have like a transcript of it? Well, there was, it's my understanding there was not a hearing at that stage, so there would not be a transcript. But it would include his petition and any, you know, the affidavits he submitted in support of the petition. Is all that in our record? I believe it is, Your Honor. And you open up an interesting issue. Are you sure state court proceeding doesn't include the trial proceeding, the original trial also? Well, correct, Your Honor, I guess it would, yes. Well, I'm not so sure by the way it's worded. Do you know? No, I don't, Your Honor. I don't either. I'm sorry. We'll find out. So, going back to this police report, you made a statement at the outset, I believe, to the effect that typically police reports are not included in the state court record. And would not, therefore, be part of the record on appeal. Is that correct? True. Typically. Okay. In this specific case, how did the state court report come into the, we now have it, somehow or the other got into our record. At what point did it get into the record and how did it get into the record, if you know? Our criminal procedure rule 9.03 subdivision 9 says disclosures are not filed. And I know from experience that some districts did that. I think it goes back to the old procedure of writing a complaint and referring to police reports and submitting them. So, it appears that despite the rule, this district apparently filed that practice, because there were police reports, as you know now, in that district court file. I don't believe that makes them part of the record for an issue presented to an appellate court, because they weren't submitted as part of the. Well, counsel, do Minnesota courts have the federal rule that the record in the appeals court is the same as the record in the trial court? And that's the federal rule 10. The Minnesota rule says the record consists of the trial, or the documents, and so on, submitted in the district court. And the transcript. Correct. Yeah. But when we're dealing with an issue on appeal, the record for the appeal issue is not just anything filed in the district court. It's what's filed in response to that issue. I mean, we could no more say that the, you know, a sufficiency claim includes the complaint filed, you know, because, you know, the record on appeal, I would submit to you, is dependent on the issue being discussed on appeal. You know, it's issue dependent. Counsel, I bet you the Minnesota rules define what's the record on appeal, and I bet it triggers several steps in the appellate process. So I think you're taking a nuanced approach, contrary to the Minnesota rules. Do you understand my point? No, I'm sorry. If you could. Most, most, I don't know about Minnesota, but most state appellate procedures rules specify exactly what is the record on appeal. Some say it's everything like the federal rule in the trial court, period, end of inquiry. And others say, no, it's only the stuff sent to us. I bet you that Minnesota is only the stuff sent to us case. State, do you know? Minnesota's rule, I think, is that, is as broad as you suggest, that it's anything filed in the district court. Anything filed in the district court, the federal rule. And, you know, we will occasionally file motions asking to strike things from briefs because they're not part of the record for the issue being decided. Right. So I don't want to sound like I'm overly nuancing this or splitting hairs. And the point I'm trying to make is I'm not sure what the Supreme Court statement, you know, that we've been talking about, you know, maybe it's technically wrong, really means. Did they really look at all the police reports? You know, maybe they did, I guess. It's just a little unclear to me. It's a little strange procedurally. But even if we accept that that was technically wrong, that maybe they overlooked that police report from Officer O and didn't see that line in the paragraph. It wasn't the Supreme Court's burden to find that. It was Mr. White's to produce evidence that she lied during, or misrepresented the facts during her voir dire. And that counsel, a reasonably competent counsel, would have known that at the time and done something. And incidentally, that it would have prejudiced him. And there still is no evidence that Mr. White has been, in fact, been prejudiced by the seating of this juror under the second prong of Strickland. So you're right, Your Honor, I don't want to get down to semantics on what the record is. It's just very odd to have police reports part of a district court file. Well, let me ask you this. Going back to the original post-conviction proceeding in the state trial court, was, if you know, was the police report called to the attention of the trial judge as part of this claim? And I guess the same question is, was it called to the attention of the state Supreme Court? And we also have cases that say, you know, we're not, we consider the whole record, but we're also not supposed to have to root around in a multi-hundreds or thousands of pages to find the one phrase that might support a position. In all candor to the Court, Your Honor, I don't know that I can tell you how it was presented in his petition or was not presented in his petition. Obviously, the Minnesota Supreme Court references his argument regarding that police report. So it wasn't, in some sense, argued, at least to the Minnesota Supreme Court. I just, I don't want to misstate the record and say it was or was not part of his petition. Well, what I'm getting at is, as I understand it, he files a petition and he attaches an affidavit and say, I know, I know this woman and I know that she was a blackjack dealer. And if that, is that all, I mean, I guess what I'm getting at, is that all the Minnesota Supreme Court had in front of it or had reason to believe? Or what, did he also call to their attention the fact that this is supported by a police report? It isn't just my statement, you know, because people make a lot of statements in post-conviction relief proceedings that you take with a grain of salt. Minnesota Supreme Court says he did not attach such a report. Clearly, he argued its existence to the Court. So I don't know how that police report was really provided in the documents filed in the post-conviction petition in state court. I see my time is up. We'd ask the Court to affirm the decision. Ms. McCauley. The reference to the police report is in our appendix at page 132, which contains Mr. White's post-conviction petition filed in Minnesota. It references both the jury foreperson, Ms. Martha Dixon, is an employee of the Fond du Loup Casino, currently is a pit boss at the casino with the responsibility of supervising blackjack dealers. Ms. Teresa Lynn Hensley was interviewed by the Duluth Police Department investigator, officer, whatever, as to her knowledge of the incident in question, blah-di-blah-di-blah. And then it goes further and explains that she is a blackjack dealer at the Fond du Loup Casino in Duluth, Minnesota. So that's where it comes from. How did the police report get to the Minnesota Supreme Court? I believe it was in the record. It appears from the record that was produced by the state at Magistrate Rao's request. It came through in their administrative record. The report, the whole record? The whole guacamole. It also appears as part, it was attached to, according to Mr. White, his petition when he filed it in the district court. As the evidence he had. He had the investigator's report. Why not just append it to his petition when it went in? I did want to point out the fact, I love it when I agree with the state. There isn't enough evidence here. There is enough evidence for us to have an evidentiary hearing. There's not enough evidence to justify habeas relief, but that's not our burden at this point. I'm going to ask, what specific request, relief, are you requesting? We're requesting an evidentiary hearing, your honor. And where would that be held? That would be held in federal district court. The Minnesota Supreme Court had an opportunity to have, the Minnesota court could have granted an evidentiary hearing. Refused to do that based on a mistaken factual analysis, which would qualify for relief under 2254 D2. 2254 E says that the decision, the United States Supreme Court in Shiro versus Landrigan, in deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which if true, would entitle the applicant to federal habeas relief. That is what we're requesting. Don't you have to make some showing of prejudice? I believe that we have shown that we don't have to prove actual juror bias, which would be the end prejudice here, in order to justify the evidentiary hearing. We need to show that this would result in what would seem to be, you know, potential of lying under oath and actual juror bias based on this connection. Tenuous claim, isn't it? I mean, it's scandalous. Tenuous, pretty thin, pretty thin. It doesn't need to be, it doesn't need to be completely developed at this stage in order to justify an evidentiary hearing. It needs to be a prima facie case. And again, at this hearing, what would take place? We would have, we would have... You'd call Ms. Hensley. Ms. Hensley. You'd call Ms. Dixon to say, were you lying under oath in the front of, when you were on guard area? Yep. And we'd have an expert witness come in to testify about the standards under Strickland, probably. I haven't actually done this hearing yet in my head, Your Honor, but... Expert would say what? The jurors lie or what? No, that a reasonable attorney under the circumstances should have realized this connection and requested a Schwartz hearing at the time. I thought that would be a matter of law for the court and not for the, some expert. Well, they, regularly in Strickland hearings, we do have an expert witness. I'm just speculating on what the hearing would be. As you mentioned at the outset, this case has a long procedural history. As you know, I was in the panel. We had to stretch to give your client relief. And you did so in the interest of justice, Your Honor. You did so in the interest of justice. Your opinion in way three, we call it... That's one thing, but then, well, okay. But it was, anyway, that's enough. We thank you for your argument, both sides. The case is submitted. We will take it under consideration.